JAVIER SOEGARD, Plaintiff and Appellee, *v.* CONCRETERA NACIONAL, INC., Defendant and Appellant. OTTO GONZÁLEZ YDRACH, Plaintiff and Appellee, *v.* CONCRETERA NACIONAL, INC., Defendant and Appellant.

No. 409.     Decided April 25, 1963.

*Alberto Picó* and *Francisco A. Rosa Silva* for appellant. *Juan Nevares Santiago* for J. Soegard. *G. Wiscovitch* for Otto González Ydrach.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

By the month of October 1957 Concretera Nacional, Inc., and Javier Soegard subscribed an agreement by which the defendant-appellant, Concretera Nacional, Inc., bound itself to serve plaintiff-appellee, Javier Soegard, 84 cubic yards of reinforced concrete with a cube strength of 3,000 lbs. Said delivery would take place in Barrio Palmer of Río Grande, where Javier Soegard was constructing a building for the purpose of moving his mixed business of dry goods, groceries, and construction materials known as "La Tienda Grande".

The defendant-appellant served 79 cubic yards of reinforced concrete at the place agreed upon in the morning and afternoon of October 18, 1957. In turn, plaintiff-appellee paid Concretera Nacional, Inc., by check, the sum of one thousand five hundred eighty dollars ($1,580), price of the reinforced concrete delivered. Next day plaintiff noticed that the concrete had not set in some places of the roof, for which reason he proceeded to so inform Concretera Nacional, Inc., through its Treasurer, Mr. Domenech. He observed the roofing slab a few days later and authorized that certain loading and pressure tests be made, at the expense of defendant. Meanwhile, Mr. Soegard ordered the bank to stop payment of the aforesaid check. The tests of the roof having been made, the results were deficient and Mr. Soegard proceeded to destroy the whole roof and construct it again in accordance with the norms in the field of construction. To collect the expenses incurred in this operation and the subsequent loss for not having used the premises, plaintiff-appellee Soegard filed the complaint which has given rise to this suit. Likewise, engineer Otto González Ydrach filed a complaint against Concretera Nacional, Inc., for injury to his professional reputation and for the moral and mental damages suffered by him. González

Ydrach had designed the building under construction belonging to Mr. Soegard, and he also supervised the project. The cases were consolidated.

The trial court after hearing the evidence of both parties decided, as a matter of fact, the following:

"The defendant having been notified of what had occurred through its Treasurer, Mr. Domenech, he promised to go to the project, and he went the following week and authorized that certain loading and pressure tests be made at the expense of the defendant.

"Said tests having been made the result was that of the nine sections of the roofing slab those marked 2 and 3 (Exh. 1) did not give the 3,000 pound strength but only 763 pounds.

"Because the roof in those sections did not support the load, the whole roof was then destroyed, as it was most advisable and safe, and a new one was made at a cost of $6,225.20. (Exh. 4.)

"The destruction and reconstruction of beams and roof delayed the construction that would have been finished by December 15, 1957, until the end of March, 1958, for plaintiff Javier Soegard to move his business of dry goods, groceries, and construction materials.

"Plaintiff Javier Soegard could not use the premises under construction, which were new and more ample, for the Christmas Season; he had to cancel orders for the amount of $15,000 and store the merchandise already delivered for $20,000, which would have netted 20 per cent profit.

"Plaintiff Javier Soegard paid the sum of $700 for the tests made at the request and expense of the defendant. (Exh. 2.)

"The work of unloading the reinforced concrete delivered to the construction in defendant's trucks lasted from 7:30 a.m. to 5:30 p.m. without interruption, since lunch was served by the plaintiff at the project, and the workers, including those of the defendant, took turns to lunch.

"Plaintiff Javier Soegard has incurred in expenses and delays in the construction and finishing of the project because the reinforced concrete served by defendant had already 'hardened' or was set at the time of using it, because the dry mixture had been prepared more than an hour and a half in advance, and a certain amount of water in excess of the amount required had

to be added so that the mixture would yield the strength required in that part of the project.

"Plaintiff failed to receive benefits from his business for the sum of $4,000, by reason of the delay in finishing the project.

. . . . . . . .

"We cannot conclude that plaintiff Otto González Ydrach has suffered damages in his reputation as civil engineer. The evidence shows a capricious inference of liability by private persons on plaintiff Otto González Ydrach, for the demolition of the project that he had designed and was supervising. He has only been exposed to the annoyances or moral suffering caused by the knowledge that the project designed by him had to be demolished by fault of defendant."

In its conclusions of law the trial court held that a person has the right to claim damages for mental sufferings caused by the fault or negligence of another person. To that effect it ordered Concretera Nacional, Inc., to pay plaintiff Otto González Ydrach the sum of $500 for moral and mental damages suffered on account of the facts mentioned in the previous findings of fact. Likewise, it ordered Concretera Nacional, Inc., to pay plaintiff Javier Soegard, Inc., the following sums:

"1. Six thousand two hundred twenty-five dollars and twenty cents ($6,225.20) for the demolition and reconstruction of the beams and roof, including materials and labor.

"2. Four thousand dollars ($4,000) for the damages caused to the plaintiff for the delay in finishing the project.

"3. Seven hundred dollars ($700) paid by plaintiff Javier Soegard for the tests ordered by defendant.

"Defendant is ordered to pay the costs, and one thousand dollars for attorney's fees that will be divided in $800 for plaintiff's attorney's fees in case No. 58-131, and $200 for attorney's fees in case No. 58-3014."

■ Appellant points out the commission of eight errors and discusses the first two jointly because they are related to each other. It maintains that the trial court in concluding that "because the reinforced concrete served by the defendant had already 'hardened' or was set at the time of using it because the dry mixture had been prepared more than an

hour and a half in advance, and a certain amount of water in excess of the amount required had to be added so that the mixture would yield the strength required in the part of the project," said court gave credit to defendant's evidence and it should have, consequently, dismissed the claim. It assumes that the time that the trucks delayed in taking their turn to mix the concrete and serve it, was due to the slowness and poor organization of the employees and laborers of the project, and the interruption in the unloading of the concrete, ordered by the master builder at the lunch hour. It stands on an erroneous premise. There is evidence in the record presented by plaintiff which tends to establish that the work in the roof was done without interruption, from the time they started to unload the concrete until it was finished, and that the work was accomplished normally and without the representatives of the project realizing at that time that the concrete served had any characteristics different from those normally present in that product when it is in good condition for use. Although it is true that the court erroneously concluded that water in excess had to be added to the concrete so that it would have the required strength, it does not imply that said court accepted that it was the master builder who ordered the water to be added to the mixture. There is evidence in the sense that water in excess was added, because the concrete was set or hardened, but as to who was the person who gave the order to that effect the evidence is conflicting. The trial court in rendering judgment against the defendant blamed it for the damages suffered by plaintiffs. If the court had concluded that the water added in excess was at the initiative and orders of the owner of the project or its representatives, it would have exonerated defendant of responsibilities pursuant to the stipulations and terms of the sales contract which clearly and expressly provided that any order to add water should be given concretely and specifically under instruc-

tions of the owner, contractor or representative of the project, thereby exonerating the vendor of the concrete from any responsibility. It is evident that the trial court did not give credit to the evidence presented by the defendant for the purpose of establishing that water was added in excess by orders of the master builder. The first two errors were not committed and the court not having believed that the master builder ordered that water be added to the mixture, the third error was not committed either.

The fourth error is based on the ground that the trial court did not consider the negligent acts of plaintiff Soegard, in relation to the undue delay of the delivery of the reinforced concrete, and causing it to set, and also, in adding water and handling it improperly and not having the proper inspection by a competent engineer or technician.

The evidence as to these extremes was also conflicting, and the conflict was decided against the defendant. Plaintiff's evidence believed by the judge is sufficient to support the finding that the defendant is responsible for the damages suffered by Soegard. The error was not committed.

■ The item of $4,000 granted to Soegard as damages for the alleged delay in finishing the project, is the object of the fifth assignment of error. The granting of said item was based on the fact that plaintiff Soegard had to cancel orders for $15,000 and also he had to store merchandise already served for $20,000, which would yield him a profit of 20 per cent.

In fact, these damages are of uncertain and speculative nature, and there is no evidence in the record to justify its existence. We agree with the appellant in the following argument:

"The court simply applied the twenty percent (20%) to the twenty thousand dollars ($20,000) and obtained the figure of four thousand dollars ($4,000) which it awarded to plaintiff Soegard. No evidence was introduced that the merchandise

180

thus 'stored' was not sold later, netting the same profit of twenty percent (20%). The accounting books of plaintiff's business were not presented to show which was his profit in former years, and no evidence of other similar business was introduced. There is no ground to infer that a building which had as an end 'more facilities', was going to produce, by magic art, a substantial increase in sales for a business in Barrio Mameyes of Río Grande. The award of compensation for profits which he failed to receive can not be based on speculative evidence or arbitrary computations.

> 'The mere fact that plaintiff may have sustained losses does not entitle her to compensation, for in order to obtain it, she must furnish the court with the basis for determining the amount thereof.' *Sánchez* v. *Cooperativa Azucarera,* 66 P.R.R. 330.
> 'As the trial court held, damages alleged to have been suffered from the possible benefits that would have been derived from certain garages they intended to erect in the said 200 sq. meters, are not recoverable because they are remote and speculative.' *Suárez* v. *Suárez,* 47 P.R.R. 93.
> 'As a general rule the expected profits of a commercial business are too uncertain, speculative, and remote, to permit a recovery for their loss.' 25 *Corpus Juris Secundum* 518, § 42(b)." (Pages 10–11, appellant's brief.)

The error was committed and said item will be eliminated from the judgment.

■ In the sixth assignment the item of $500 awarded to the other plaintiff, Otto González Ydrach, for alleged moral and mental damages, is attacked.

In relation to these damages the trial court concluded:

"We cannot conclude that plaintiff Otto González Ydrach, has suffered damages in his reputation as a civil engineer. The evidence shows a capricious inference of liability by private persons on the part of plaintiff Otto González Ydrach, for the demolition of the project that he had designed and was supervising. He has only been exposed to the annoyance or moral suffering caused by the knowledge that the project designed by

him had to be demolished by fault of the defendant." (Page 11, appellant's brief.)

Again we agree with appellant in that the award of compensation is not appropriate for the alleged damages claimed by engineer González Ydrach, and to that effect we copy from its brief:

"In other words, the court awarded the sum of five hundred dollars ($500) to this plaintiff because he allegedly suffered when he saw the roof of Soegard's building being destroyed. González Ydrach was not even the owner of the project and his 'sufferings' as architect and inspector are not compensable in any way. It has been decided uniformly by this Hon. Court that generally, mental and moral damages based on a breach of contract or in the destruction or loss of property are not compensable. *Camacho* v. *Catholic Church*, 72 P.R.R. 332, 338; *Díaz* v. *Palmer*, 62 P.R.R. 106; *Díaz* v. *Cancel*, 61 P.R.R. 857. See also the case of *Rosado* v. *Smallwood Bros.*, 62 P.R.R. 611, 614 in which it was held that there can be no recovery for mental anguish or suffering for failure to go to work. In fact, the only evidence of moral damages that appears in the record is: (a) his worry for what the people might say, etc.—that is, damages to the character—which the court did not find proved and (b) that he did not go to visit his sweetheart because he was so worried. (I T.E. 31–32.) It is obvious that this type of damage can not be foreseen and is not compensable. *Camacho* v. *Catholic Church*, *supra*, at 341; *Díaz* v. *Cancel*, *supra*, at 857. (Pages 11 and 12, appellant's brief.)"

Said item will also be eliminated from the judgment.

■ The seventh error was not committed. The award of attorney's fees is proper in this case. However, from the item of $1,000, the $200 awarded to plaintiff González Ydrach will be eliminated for obvious reasons.

The aforesaid assignments of error having been decided, the eighth and last assignment predicated on the propriety of the counterclaim is untenable.

The judgment rendered by the Superior Court will be modified in conformity with this opinion, and as thus modified, it will be affirmed.